case number 3190378 people of the state of illinois affily versus montgomery ritchie appellate thank you um good afternoon afternoon afternoon um mr shire shire yes um would you like to start yes ma'am i would thank you may may it please the court counsel uh my name is charles shire and i have the the honor of representing the appellant at montgomery ritchie he was convicted of predatory criminal sexual assault and two counts of aggravated criminal sexual abuse we filed a brief appealing and we lay out three main areas the first area i'd really like to cover is the ineffective assistance of counsel that standard has been heavily um uh you know law on that the strickland case it's a plain air standard there are a couple of different things that from our vantage point clearly show that mr ritchie did not get proper representation the first area i want to talk about is the testimony of gracie martin gracie martin was not the victim the victim was destiny ritchie uh gracie was a propensity witness in the in her testimony she testifies that the appellant had assaulted her as well but then she goes on answering a state question that she was also also sexually assaulted by her brother in the past and she didn't think it was a big deal because she had dealt with something far more severe in the past the appellant's attorney does not stand up and immediately object immediately which he should have done um there was a prior motion that had been filed and granted by the court under the rape shield act saying that we were not going to have testimony about other sexual activity yet appellant's lawyer did nothing they allowed that testimony in so here we had a propensity witness whose credibility was bolstered through sympathy because not only was the testimony that she had been assaulted by the appellant but also by her half-step brother so bad that she thought the abuse by the appellant in her words was no big deal so that in and of itself the defense lawyer should have objected it should have not been allowed by um by the judge because of his own ruling on on the rape shield act but judge it's even worse because i invite the court to look at page 31 of our brief and on page 31 of our brief we cite the state um appellant's lawyer allowed ms martin's testimony to go on and during a break then he approaches the bench and there is an exchange between the state appellant's lawyer and the prosecutor states quote i think there's a real problem with this defense attorney sitting here through all the testimony and never objecting letting all of this information come out that he says it's so prejudicial and then after he's allowed the prejudicial information then say it was so prejudicial it needs to be stricken he could have objected but he didn't then we go on on page 32 we point out appellant's lawyer even agrees that hey i probably should have but he tries to say it was tactical there was nothing tactical about that there nobody could reasonably think that was tactical he should have objected he should have moved for a mistrial because it violated the rape shield act motion that was filed and granted by the judge but there's a second area the appellant's lawyer allowed mr ritchie to be called a racist a homophobe and a child beater all without any objection first he was called a racist destiny ritchie the victim in this case testified testified as if this was relevant at all but testified that um now how could any jury look at him and assess the credibility of the evidence if they now believe that he so freely uses a word that is so offensive um so if he's now a racist then they go on to say that he believed that he had been called a word that was derogatory towards homosexuals and he slaps his daughter in response so now he's also testimony that he's homophobic not only is he a racist but he's a homophobic and maybe those things are true maybe they are but the jury should have never have known that because it's irrelevant and highly highly prejudicial um now hearsay allowing hearsay in can be ineffective assistance of however it's not it's not just letting one thing in it's this drip drip drip i think it has to be sort of this totality but look at some of the hearsay that was allowed destiny ritchie the victim in this case testifies that she told her half-brother nathan then she's allowed to testify that nathan tells a babette which was the appellant's former girlfriend that's hearsay how how would he be allowed to do that there was no objection at all then later babette the girlfriend testifies as to what she heard from nathan so you got three witnesses hearsay twice and by allowing this this props up the credibility of the victim destiny you know in and of itself allowing hearsay in okay probably not ineffective but when you put it in all these other areas it is there's a fourth area nancy hackman who's the victim's maternal grandmother she's asked on cross-examination if she believes the victim that that's an that is an outrageous question outrageous should never have been asked but the fact that it was um he should have stood up and objected because how is that credibility is the province of the jury in the jury alone she didn't ask does she have a reputation what's her character for truthfulness none of that do you believe her or words to that effect i don't remember how does that prejudice your client oh and a great question judge i'll explain one the grandma then testifies no i don't believe her then in the closing argument because of that question the prosecutor goes on to say well why would she lie look what she's been through even her grandma calls her a liar that was inappropriate that should have been also an objection during that close um i hope that does that answer your question yes it does okay then i think the most telling area and i put this in conclusion of our opening brief but the appellant's lawyer while while the appellant is testifying he asks the defendant in the case did you sexually assault tiffany ritchie tiffany ritchie was not the victim tiffany ritchie is a lawyer here in peoria the appellant's lawyer was not prepared at all and he not not anyone can misspeak anyone can misspeak and get a name wrong but when you place it into context of all these other mistakes that i have pointed out it is grossly uh unfair that clearly he has hit the ineffective assistance of counsel laid out in in strict now um other crimes were allowed there were propensity witnesses allowed gracie april and heather the court allowed them there was a motion filed 725 ilcs 5 backslash 115-7.3 there was a hearing and then these other crimes um testimony was allowed to come in yet there was no evidence of any common grooming any common words that were used um to to convince these these victims no and i i call that common modes of manipulation um no common duration of the assault now the location was still in the home so the description of the surroundings by the victims in other words in the exact same location in the house um no common description um or really any clarity on sexual acts or behaviors before and after the sexual act there really was nothing unique other than they were all under age and he that would balance out the prejudicial nature of it because um other crimes evidence is always going to be prejudicial always because it's going to you know suggest in a sense that the defendant create or actually caused um um the offense as as alleged but the court still has to balance it out and what was really presented there really wasn't anything presented so then we had ultimately what amounted to this mini trial within a trial this mini trial that was essentially four victims that all said the same thing without a lot of specifics um and the state really needed this they needed to have these other victims otherwise you know there wasn't much to her testimony they didn't she didn't promptly report this there was no dna or any any forensics this all came years later and there was this underlying bias the victim in this case and the appellant they had friction and that was testified to they you know they hadn't talked to one another he wasn't invited to certain things i think it was the graduation if i if i recall right uh but was allowed to right before the graduation to pay for some photographs for the graduation and so there was this evidence that perhaps whatever caused the anger between them occurred between the defendant in this case paying for the pictures for the graduation where he was invited to and the and there was a few days or weeks in between um and that was really crucial to the case without it i just don't see how they would have how they would have gotten to a a conviction on the third i just have a question on the facts wasn't it prom and graduation or do i have that wrong yeah no ma'am i think you do have it right i think i i misspoke yes it is prom you're right that helps me demonstrate the point about the misuse of a name right does that mean you're ineffective well and that and that's a great point and and no and here's why anyone can misspeak a one mistake is not a big deal one mistake isn't but it's mistake after mistake after mistake and oh my gosh when they have the defendant on the stand and the lawyer asked the very direct question did you sexually assault fill in the blank right and it's supposed to say destiny ritchie and instead he says tiffany ritchie the jury had to be confused who the heck is this tiffany ritchie she's not even in the case she's not a person who's ever been uttered but i think it is evidence that the attorney was so ill-prepared that what he had on his mind was another female lawyer who practices in this jurisdiction that's how ill-prepared he was and if your honor if you if you look at the docket mr boresberry withdrew from the case and then came back into the case at a short amount of time before he announced ready for trial it's that's part of the record he withdrew the public defender came in and all of a sudden boresberry comes back in the case and magically is ready for trial i i think that when you look at that and you look at all the mistakes that he made and he and and his misspeak and i'm really glad your honor that you point that out one mistake doesn't do it but several mistakes do and i think it's quite a job boresberry hired his private counsel then he was in court appointing right he was private counsel yes that's my understanding yes he was private counsel uh court appointed was dale thomas he was the public defender so it went well i'm not sure who the first lawyer was but boresberry was as private counsel he withdrew dale thomas was public defender then boresberry came back well perhaps this is the kind of representation that client expected or wanted he hired this gentleman he did but i i think yes and you're absolutely right and you're entitled to have the lawyer of your choice but you're also entitled to have that lawyer be prepared and he should have been prepared and he wasn't and and that and that is shown and he didn't anticipate hearsay objections he didn't anticipate what he was going to do to deal with gracie's testimony he was taken off guard by a lot of things because he wasn't ready it's not that he wasn't capable of course he's capable mr boresberry is a good lawyer but he wasn't ready for this and his misspeak is very telling thank you your honor thank you mr shire um mr ganetovic good afternoon good afternoon your honor may it please the court my name is gary ganetovic i am staff attorney with the appellate prosecutor's office uh council um i will take and and address the ineffective assistance but i want to take an address of someone in a different order i'm going to kind of address it in the order that it was presented by the defendant in this brief um strickland stands or states the standard that for ineffective assistance you need efficient performance and prejudice and i think in the facts of this case i don't think we have deficient performance i don't think we have any prejudice inherent to the defendant as a result of the claim deficiencies uh raised by defendant on appeal uh with respect to first of all the the first objection here is the failed subject to hearsay and the thing is hearsay is the is the uh admission of an out-of-court statement that is made that is often for the truth of the matter asserted that uh relies upon the credibility of that statement is based on the credibility of an out-of-court assertive who's not been subject to cross-examination most of the claims here that that have been raised by an appeal refer to statements by witnesses refers to testimony about witnesses about statements that they made and so that in and of itself removes it from from the hearsay rule with respect to um the testimony that well um my half brother uh uh talked about that or and and babette did this and said that basically in those statements there was no relating as to what happened all there was was a reference or a connection as to how all of this came about i think what the prosecutor if you look at the totality of the prosecutor's case what the prosecutor's trying to do was was to link all of these people because all of the people the victim in this case richie uh martin racy martin and and and april macklin all somehow either related to defendant or were related to someone within with whom defendant was having i was either married and or had was living with at the time so what the what there was is there was this connectivity and how all this started and how it all came out and how why it all came out now was part of the prosecution's theory to have to show because as counsel did point out there was a number of years between when the sexual abuse sexual misconduct molestation occurred and when it was being tried years later so don't all of those links require that the statements are truthful they are being offered for the truth if you're trying to use them to establish the linkages i think that when you offer those statements to establish the link i think it's being offered to take and establish something outside of the offense of what is being committed so i think that it's for a different purpose but i can understand what your honor is saying i understand but i think that that at the and establishes the link it establishes a why but it doesn't necessarily establish the what had happened it doesn't really go directly to the defense so if there is any error in that it's it's harmless it doesn't it doesn't it doesn't prejudice defendant how how does that linkage how does that hearsay linkage present prejudice the defendant just until like how somebody found about something whatever that something might be your question raises a concern that i have that sort of permeates this particular case and that is that all of this corroborating information or allegations we're we're told that it's other crimes evidence but it isn't really um a proven crime because there's never been a prosecution there's never been a trial there's never been a conviction um it's all basically i'm saying this happened i didn't say that it happened at the time that it occurred there's been a long period of time that has intervened here um it seems like in that kind of situation it's critically important for the lawyer to do a really spectacularly good job because he's basically batting at shadows is that fair i mean is that a fair statement uh are you referring to your statements your honor about the fact that he has to do a superlative job because he's shadowboxing is it fair to say that he's shadowboxing i mean we're not dealing with actual proven crimes what if your honor is speaking about the fact of a crime being something that has been that has been charged that has been tried and proved and a verdict issue i think that would be you know that would be i think something that's beyond what the generalized definition of other crimes evidence is other crimes or other bad acts it's it's a situation where when you look at the statute i don't think the statute necessarily calls for a conviction in order to be considered an other crime and yes indeed it does make yes indeed it does make it difficult for a defense counsel to have to take and and deal with other evidence especially especially with propensity because as i'm sure as your honor is very much aware as a general rule other crimes evidence or other bad acts evidence is not admissible to show propensity it's only because of the statute that creates that exception that allows crime right that allows this kind of evidence to come in so in dealing with that kind of an exception and in dealing with the factors that the statute sets out which is the similarity of the events i think that you know i i think that yes it is is very much of an uphill battle but i don't think that you i don't think that you judge counsel's performance simply on the difficulty of the task i mean it's no different than when i guess it'd be the same thing which your honor is talking about same thing with with a counsel dealing with a murder case back when the death penalty was was was in in effect they had an uphill battle i mean there's a lot of evidence that would be put in there's a lot of evidence that's there that shows that his client committed it's an uphill battle but but their their performance was not judged by the difficulty it's judged by what they've done and the idea and against the norms of of representation that that's expected of in any kind of a case and and i don't want to wander very far afield here but in response to the very concerns that you've identified the state had developed a panel of judges and there were requirements that they had to meet because of the severity of the punishment involved for as other crimes what i'm suggesting is that there are crimes that are that have been where there's been a conviction where it's all been tested and and then there are crimes where it's just an allegation that has nothing behind it it's just an allegation and it would seem that in that kind of crime where it's allowed to come in to show propensity that there's a higher burden that the attorney has to clarify whether or not this actually happened didn't um council vigorously defend against the state's request to admit the propensity evidence wasn't there a hearing on that yes and so that's there's the record of what defense council did the court entered an order saying it's going to come in how was defense council supposed to behave in light of that court order well in light of that court the most that i shouldn't say the most but i'm sure that different council might have differing tactics but in this case what council did is council attacked and and basically addressed the the time frame um this is this what you can see is you can see the development of his theory when you look at his closing argument what he did is he he attacked the time he attacked the failure of the victim in this case as well as macklin as well as martin about the fact that he didn't say anything and he pointed out the time frame he pointed out the fact of what they had testified to was i don't want to say use the word absurd but basically wasn't established by the fact that it was not uh consistent with with with common sense uh he pointed this out and and he argued uh vigorously about the facts that what they claimed happened and how they could possibly happen just couldn't have been and he cross-examined them about that so council did what he could do in an effort with respect to the to because the other crimes evidences come in the most he could take and do was to question the other crimes uh evidence witnesses about what happened about when it occurred about how it occurred about why they didn't say anything and just and and do the same thing with the victim in this case so i can't see where in in this particular in this particular case the failure here for example to to object to hearsay about the the linkage about how people about how people found things out without going into any depth into what was said about the incident itself actually prejudices the defendant uh the same thing with respect to uh bolstering the witness's testimony and the racist and the bigot the thing about it is a lot of this because of the nature of defense because of the nature of of defendant trying to take and say in this case that the reason why one of the reasons why and one of the things he also cross-examined on was the fact that uh at at at the time that the victim in this case turned 18 that the child support was going to stop there was also other things that were that were brought out about the fact that you know well he went to the prom he took pictures he did this he did that the thing about it is defendant part of his defense was also trying to show that what happened in this case was that that the victim here was put up for this that somehow there was some kind of a conspiracy theory going on to blame him for sexual misconduct that didn't occur and so in an effort to to to address that again part of the state's case was simply to establish or to show why there was this rift in their relationship and trying to show that the rift in the relationship was to events that occurred obviously after the um sexual misconduct years after but also established that rift before uh the allegations came out to establish a reason for the rift the rift isn't here isn't because of the fact of you know i just want to get even as a conspiracy the rift here is because there was you know at one particular point in time she she claimed that she used the word fathead and and the defendant thought that she was worth faggot and he slapped her the fact that he slapped her across the face whether or not that constitutes child abuse or not is an issue for another day but the point of the matter is i don't think that that necessarily establishes him as a homophobic or a child beater as counselors laid out in his brief i don't think that establishes the child beater and the fact that um she explained that the defendant had and used the n word in in referring to uh the victim's boyfriend in this case who was african-american okay defendant tries to take and say well the reason why i spoke to her about it and i didn't use the word was because of the fact that i was concerned about my daughter i was concerned because of the fact that of her boyfriend's criminal record that he had whether or not and of course there's there's nothing out there that is brought out again to establish that he had a criminal record but once again in order to rebut that kind of of evidence that kind of justification by the defendant of course the prosecutor is going to bring out other things that he said that the victim claimed that he said that basically contradicts that so what has to happen here is in a lot of these things that counsel is on appeal here is arguing is the fact that have to look at what the defense was because the prosecutor obviously knew what that defense was and what the state's case was what the purpose was for this evidence and and and as a result of that that's the reason why a lot of what they're objecting to with respect to uh hearsay etc is really more kind of a a rebuttal to the anticipated defense that was in fact presented with respect to defendants mother's testimony obviously the court is going to have the record the court's going to be able to take and judge for itself i don't think that what the prosecutor did in this case was to bolster the credibility of the victim i think her testimony or her questioning i should say was to bring out the bias of the grandmother well the grandmother had such a relationship but how the grandmother in turn turned around and just immediately cut everything off i think that shows bias that shows uh partiality and favoritism granted it was her son who was on trial that still doesn't that still doesn't insulate her from being judged like any other witness who would be there to take and testify um with respect to the rape shield that there yes there was a ruling and counsel did not object immediately i when you read counsel's explanation as to why he didn't want to he explained why he didn't want to take an object at the time didn't want to make a big deal he didn't want to bring something out in front of the jury he didn't want to make more of a deal in front of the jury than he had to he waited before he started to cross-examine gracie martin took a break broached it that way now i think reasonable minds might be able to take and differ on whether or not you stand up and start raising the flag and start you know raising your hands and start getting it a bit i don't want to interrupt you but we're getting close to the end of the time and i would just like to um question have you answered my question about the sufficiency of this record to judge whether those were matters of trial strategy or not um if it was a matter of trial strategy then it's not ineffective assistance no matter what we might think with 2020 hindsight those decisions are made when some of the spontaneous things erupted in the courtroom that you don't expect and counsel for example didn't direct the attention to the word uh the homophobic word or the uh other unpleasant word just let it go and and maybe there's a good reason for that but does this record allow us to decide whether it was a matter of trial strategy or not i mean i i understand if you don't do a motion to suppress and the evidence could clearly be not do this blatantly ineffective assistance of counsel but here could you just address whether the record will allow us to decide whether it was trial strategy or not i think that the record is i think adequate to make that determination i know and and i feel as and what what and your honor please do correct me if i if i which i know you know me you know me i'm not shy but it's it's like is is this ineffective assistance of counsel issue developed enough on this record such that it can be cited now or should it be put off for a post-conviction proceeding where the allegations can be raised the petition would be would be docketed and i say theoretically docketed because there's always that possibility of being summarily dismissed but if it's docketed and it gets by a second stage motion dismiss it goes to hearing a record can be developed because counsel would be able to take and testify so that's kind of the thrust of my question also uh we presume that trial judges know the law and are acting according to the law and i think that um appellant's counsel wants us to presume that defense counsel didn't have a good reason and i'm wondering if the presumption shouldn't go the other way shouldn't defense counsel get the benefit of the doubt until in a post-conviction setting his explanation for doing it that way is not accepted by the court so you you've answered my question i appreciate it very much and i do not feel the need to correct you today mr genetic thank you is there a limiting instruction given on the other crimes evidence i believe that i just want to make sure that yes i believe that if i am not mistaken on other crimes evidence every time it was brought out there was instruction given as to what the purpose was for that evidence so a 3.14 i'm not i'm not sure i'm not i'm not sure that it was necessary to follow 3.14 but i believe that it was there was no and the reason why i took a moment there your honor is because there was a discussion about doing some sort of an instruction with respect i believe to the rape shield there was some discussion on that but no instruction or limit instruction was given on that at that time on that particular issue okay i believe that that's how the record i think that is how the record is and uh so the defendant uh defense attorney didn't say one way or the other they wanted uh limiting instruction or didn't want a limiting instruction on on the uh the rape shield issue yeah on other crimes i i believe i i don't recall right now the impetus for the instruction but i know it was discussed i know there was a request there was a request to strike it uh so i know but i know there was discussion and the decision was ultimately made not to give the instruction uh but it did open up counsel to take and question and to take him further cross-examined gracie martin with respect to the uh the testimony on that now uh to the question earlier question that judge mcdade asked the the standard there is uh that it's uh you don't have to prove beyond a reasonable doubt about the other crimes evidence but you you uh also has to be a little bit more than just mere suspicion so it's sort of like more probably truer than not true isn't that right that would be correct it's not it's not the thing about it is the thing the thing with respect to to the admissibility of evidence is the fact that that the cases do provide that there is a an ability to disagree in other words reasonable minds can disagree whether or not evidence is or is not admissible right uh without necessarily having to reverse an evidentiary ruling made by a trial judge because the discretion the standard of review especially with with with other crimes is an abuse of discretion did the trial judge abuse his discretion when you look at the statute and you look at the the uh the factors and you look at the proximity and time and you look at the degree of factual similarities when you take a look at and you judge it all of that weighs heavily more on the side of provative value as it does to prejudice and i think that's a case but but before it's introduced uh that before the trial court introduces the evidence uh that other crime or wrong as there should be some kind of uh appearance that is more probably true than not true isn't that correct and that comes through when it's introduced right correct and that comes through through the testimony of the other crime evidence witnesses i believe as uh this has been expressed again in a number of cases it it is a truism here basically in in in any criminal case evidence all evidence that the i know that's a generalized statement and but that is this is something that the legislature has created this is something that the legislature has created this exception for this and as long as there is the reliability in that okay as long as there is reliability in in the other crimes evidence and what is being brought out okay other than just by a prior conviction or by prior trial etc um the trial judge i think has as a discretion and basically applied in this case applying the statute correctly and made the correct decision to allow uh this evidence of the crimes and in as justice right pointed out counsel in this case did object to it didn't uh vociferously fight against it but uh the trial judge found otherwise and so in this and that's what the defense attorney made up 403 and prejudicial it was objection definitely made yes definitely made an objection to the uh to the miscibility of this i'll briefly to that to the rape shield issue with respect to gracie martin again i don't think that the the um the purpose of the prosecutor going into that was not to goad the defendant into asking for a mistrial but because gracie made this maybe you know testify that the touching was like didn't really wasn't any really big matter wasn't anything really that important to her right uh then stating because you know of things that have happened in my life it wasn't really that big of a deal that sort of testimony i think needs clarification i think it needs edification i think one needs to know what she was talking about especially from the state side because obviously left unchecked defense counsel could could obviously clearly argue to the jury hey look even she didn't think there's any big deal how can you take and find that this defendant really did anything offensive did anything wrong did anything uh that was criminal in nature i mean even even the victim even testified it's no big deal without some sort of clarification of that that leaves a huge hole in her testimony and i think does it i mean uh if a crime was committed does it matter whether or not the victim thought it was a big deal or not well in a situation like this in a situation this kind of situation i think that i think that it does i think that it can actually um it can create doubt where there really isn't any doubt when all the facts are brought out and i think the providing an explanation allowing her yes it talked about prior sexual misconduct performed you know against her by her half brother yes it was brought out yes it contravenes the uh rape shield statute and with trial judges ruling but it was something and then the prosecutor i think was very candid about the fact that she knew where she was going and she knew what she was doing consensual defense of racism pardon me consent's not a defense is it well no i'm not saying i'm not saying that i'm just it goes to the goading for a mistrial it goes the fact of trying to take and do something underhanded and it doesn't it's not a defense of this but i think what it speaks to it speaks to the reason why the prosecutor and explains why the prosecutor chose to do what she did and Mr. Genetovic you know how you invited me to correct you i am looking at the lights is have we run out of time for you oh oh yeah absolutely i'm sorry i'm my i'm i couldn't think i'm sorry i know that you like to talk Mr. Genetovic but sorry we have to be as well i apologize your honor thanks for taking it in in fairness we did keep asking questions that's true that's true Mr. Shire any rebuttal thank you judge um a couple of different things first with regards to Gracie Martin it's not so much that Gracie Martin was saying that it wasn't a big deal what she was saying was if you compare it to the rape from my brother my stepbrother half-brother it was no big deal i think what the testimony was that was so egregious that what it is alleged the defendant did to her she in a sense shrugged off and why that is so crucial that to me suggests one she probably you know that was brutally raped by her her stepbrother you don't know that do we for me of course we don't but that's what she's saying but that's what she's saying she's saying it was so bad that what he did yeah i moved on and i i feel like that creates credibility to it that should have never have been there because they needed that credibility to prop it up when if i could bounce over to the hearsay portion destiny is allowed to testify that Nathan tells Bobette now Bobette's the ex-girlfriend if how can she do that and when she does that that creates credibility in her telling Nathan Nathan never testified what if Nathan said no that never happened he didn't testify we don't know what Nathan would have said yet the jury heard what he said because allegedly Nathan tells Bobette well that creates credibility to what destiny told Nathan and they needed this they had to prop it up because otherwise it's pretty thin it's years later there's no forensics and if we look at her versions you know she claims it happened three times and on this very first time Bobette's present Bobette's two kids are present and Nancy the maternal grandmother is and this is a very small house based on all the testimony and they're all there watching television together and somehow the defendant in this case was allowed to rape Destiny in a nearby room without anybody knowing or hearing or or anything in the second time she testifies Bobette's in the house now she does say Bobette's asleep but she says well maybe Nancy the maternal grandmother is there now remember Nancy testifies and she doesn't support or corroborate any of this and then on the third time there's no fewer than 10 kids waiting at the front door for Destiny to come out and play Bobby Sinclair is watching television in a room with the defendant Bobby Sinclair leaves the room for 90 seconds to get a beer and there's a digital sexual assault in that 90 seconds and Destiny goes out to play with friends I the the problem is is that could that have happened of course but it's not very likely it's not very credible and they needed all these other things to add to it which is why I think they all appeared and had Mr. Boersberry properly prepared to battle battle at shadows or batting at shadows as Justice McDade uh referred to it then I think he could have addressed this a heck of a lot better he's clearly not prepared and I I would love to know what the strategy is to sit back and allow your could enlighten me on that I would I would maybe consider that in my future trials but there is no strategy to that and couldn't the state have gone and gotten an affidavit from Mr. Boersberry and supplemented the record that that was trial strategy if we can't get that out of out of the transcript I mean all of us have tried cases we all know that's not trial strategy that's because you're not prepared you don't know what's going on and that you haven't raised any objection to the sufficiency of his cross-examination of the victim or the propensity witness you haven't raised any objection or indicated that he wasn't prepared during the hearing on the propensity evidence being admitted and with respect to the motion in limine you haven't raised any issue that closing argument was not persuasive he didn't know the record he he didn't argue properly so if you adequately cross-examine the complaining witness if you fought hard to keep the propensity evidence out and if you made a very good closing argument how do these other minor evidentiary what do I want to say withholding an objection to evidentiary issues how does that prejudice your client well I appreciate that it's a tough question and I appreciate it and I can I can answer it like this because I didn't argue it doesn't necessarily mean that Mr. Boersberry aggressively did anything it's in the record and that record's before the court the court can see how he cross-examined Destiny I don't think we're not lawyers for either side you know we can't to support your argument we read the briefs and we're we I understand yeah but he is his cross-examination of Destiny and his closing argument just because I don't think that those necessarily rose to a certain level for me to pick apart doesn't mean that the failures and all these other things that are happening through the trial make it okay there's there's you know there's nothing about cross-examining the victim that is more important than dealing with other witnesses those they're all important and he he failed substantially on the majority of what was happening in that trial um and if I understand your answer then the prejudice comes from the artfully answer your question but yes it's that drip drip drip it's that totality okay I understand your answer thank you for responding we thank you for your arguments this afternoon um this has been a very interesting discussion um we will take the matter under advisement and we'll issue a written decision as quickly as possible